**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TERRY L. POLING,**

           **Plaintiff,**                     **Case No. 2:10-cv-963**
                                         **JUDGE GREGORY L. FROST**
      **v.**                            **Magistrate Judge E.A. Preston Deavers**

**CORE MOLDING TECHNOLOGIES,**

           **Defendant.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendant Core Molding Technologies' ("Core")

Motion for Summary Judgment (ECF No. 26).  Plaintiff Terry L. Poling has not filed an

opposition.  For the reasons that follow, the Court **GRANTS** Core's Motion and directs the

Clerk to enter judgment in its favor.

### I.  Factual and Procedural Background

Defendant Core is a for-profit corporation that operates a production facility in

Columbus, Ohio.  Core produces fiber reinforced plastic molded products and sheet molding

compounds that are used in manufacturing automobiles, personal watercraft, telecommunications

equipment, recreational products, automotive aftermarket accessories, cooling tower parts, and

other commercial products.

Plaintiff Poling is a former Core employee who worked in the maintenance department at

the Columbus plant.  While employed at Core, Plaintiff was a member of the International

Association of Machinists and Aerospace Workers, AFL-CIO District Lodge 34, Local Lodge

1471 ("the Union").  The collective bargaining agreement ("CBA") between the company and the Union included a provision allowing for a certain number of unpaid days off resulting from unexcused absences and tardiness.  Once an employee exhausted the allotted number of unpaid days off, further unexcused absences would result in termination.

In May 2008, Plaintiff requested coverage for absences from work under the Family & Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*  Plaintiff requested intermittent leave due to a condition known as Reflex Sympathetic Dystrophy Syndrome ("RSD").  Core accepted and certified Plaintiff's FMLA leave for his requested monthly treatments and physical therapy.  Between May and September 2008, however, Plaintiff never took FMLA leave.  Because he worked the night shift, Plaintiff's medical appointments did not interfere with his work hours.

On September 20, 2008, Plaintiff called Core at 3:35 p.m., leaving a voice mail message that stated: "Terry Poling, Night Shift, FMLA."  Plaintiff did not identify the FMLA-related reason for his absence.  Plaintiff made the phone call from his Lake Erie vacation home, where he had traveled the day before, despite knowing that he was scheduled to work a mandatory overtime shift beginning on the night of September 20, 2008.

On September 22, 2008, Jodi Schaad, Core's Human Resources Manager, sent a letter to Plaintiff, in which she informed him of his eligibility for FMLA leave and requested medical certification for his September 21 absence.[1]  The letter warned that "[a]ny absences not

---

[1]Plaintiff worked the night shift during this time.  Thus, his scheduled work shift for September 21, 2008, actually began at 10:00 pm on September 20.  For ease of reference and to eliminate confusion, the Court will simply refer to Plaintiff having been absent for his September 21 work shift.

qualifying as FMLA will be subject to and recorded according to the attendance policy."  This admonition was significant because Plaintiff had already exhausted all of his paid and unpaid days off available to him as of September 20, 2008.  Thus, an unexcused (*i.e.*, non-FMLA qualifying) absence for September 21 would result in the termination of his employment under the attendance policy set forth in the CBA.  Enclosed with the letter was the medical certification paperwork for Plaintiff's medical provider to complete.  Plaintiff was given until October 8, 2008 to return the completed certification paperwork.

By October 8, 2008, Plaintiff had not provided Core with the proper FMLA certification for his September 21 absence.  Thus, following Plaintiff's work shift on October 8, Schaad informed Plaintiff in person and in writing that Core was terminating his employment for violating Core's attendance policy.  Schaad met with Plaintiff and the Union Steward to explain what certification paperwork was required in order for Plaintiff's leave to have qualified as FMLA leave.

Despite informing him on October 8, 2008, that Core was terminating his employment, Schaad gave Plaintiff one more opportunity to submit the certification paperwork.  Later that day, Plaintiff obtained and submitted certification paperwork from Franklin Demint, D.O., at the Kingston Family Medical & Spine Center in Kingston, Ohio.  Dr. Demint's paperwork mentioned Plaintiff's RSD condition but was silent on the reason for Plaintiff's absence on September 21, 2008.  And in response to the certification form's question about whether Plaintiff could perform the essential functions of his job or work of any kind, the doctor wrote, "I don't know."

After receiving Dr. Demint's paperwork, Schaad gave Plaintiff another opportunity to submit an FMLA certification to cover the September 21 absence.  Schaad explained to Plaintiff what was required in order to certify his FMLA leave.  Schaad even gave Plaintiff a piece of paper on which she wrote down what Plaintiff needed to provide in the certification: "Completed forms w/ correct complete answers and an answer as to why you needed to miss 9-21-08 day in question."  Between October 8 and October 15, 2008, however, Plaintiff failed to submit any additional certification paperwork.  Schaad sent Plaintiff another letter on October 16, 2008, explaining that his existing medical certification from Dr. Demint did not contain sufficient documentation to certify his absence as FMLA-qualifying.  As a result, Schaad informed Plaintiff that Core's termination of his employment was final.

Plaintiff, represented by the Union, challenged his employment termination, claiming that it did not meet the CBA's requirement of "just cause."  In a grievance proceeding, an arbitrator ruled that the termination did not meet the "just cause" standard.  The arbitrator ordered that Plaintiff be reinstated at Core and, after negotiation with Core and the Union, awarded Plaintiff $29,720.64, which covered back pay, benefits, and lost opportunities for overtime resulting from his termination.  Plaintiff returned to his position at Core and worked until April 2010, when he was laid off as a result of the company's decision to transfer some of its manufacturing operations to a plant in Mexico.

On October 26, 2010, Plaintiff filed this action in the Franklin County (Ohio) Court of Common Pleas against Core for violation of his rights under the FMLA.  The suit was removed to this Court by Core, invoking this Court's federal question jurisdiction.  (ECF No. 2.)  In a Preliminary Pretrial Order, this Court permitted Core to file a motion for summary judgment

4

directed at the potential mootness of Plaintiff's claims due to Plaintiff having obtained relief in the Union grievance process.  (ECF No. 9.)  Pursuant to the Preliminary Pretrial Order, Core moved for summary judgment, which this Court granted in part and denied in part.  (ECF No. 12, 17.)  The Court granted the motion as to Plaintiff's claim for compensatory damages and equitable relief, but denied the motion with respect to Plaintiff's potential recovery of liquidated damages and attorneys' fees.  (ECF No. 17, at 7-13.)  Thus, the only remedies left for Plaintiff to pursue in this case are liquidated damages and attorneys' fees under the FMLA.

Core has now moved for summary judgment on the merits.  (ECF No. 26.)  Plaintiff's deadline for filing an Opposition to Core's Motion for Summary Judgment has come and gone without Plaintiff filing either an opposition or a request for an extension of time in which to do. Accordingly, Core's Motion is now ripe for adjudication.

## II.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp.*, 477

U.S. at 323. The burden then shifts to the nonmoving party, who must show that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

This case presents the atypical situation in which the nonmoving party — the Plaintiff — failed to respond to the motion for summary judgment. Although the Court may generally grant unopposed motions, *see* Local Rule 7.2(a)(2), it is not empowered to do so where a motion for summary judgment is unopposed. Rule 56 still requires a court to determine that the moving party has demonstrated the absence of a disputed question of material fact and a right to relief as a matter of law. *Miller v. Shore Fin. Servs., Inc.*, 141 Fed. App'x 417, 419 (6th Cir. 2005). That is not to say, however, that the Court must do the work of the nonresponding, nonmoving party. "[W]here the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *In re St. Clair Clinic, Inc.*, No. 94-3943, 1996 U.S. App. LEXIS 1416, at *2 (6th Cir. Jan. 8, 1996) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Instead, the Court may rely upon the facts presented and designated by the moving party. *Id.* (quoting *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)). If those facts establish the moving party's entitlement to judgment as a matter of law, the Court may properly grant summary judgment. *See* Fed. R. Civ. P. 56(e)(3).

6

### III. Discussion

The FMLA entitles a qualifying employee to 12 workweeks of unpaid leave each year for, among other things, an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Plaintiff claims that Core's termination of his employment in 2008 violated the FMLA. (ECF No. 2, Compl., at ¶ 13.) Though lacking in exacting detail, Plaintiff's Complaint refers to the two distinct theories of recovery recognized under the FMLA. Paragraph 13 of Plaintiff's Complaint alleges: "Core unlawfully interfered with, restrained or denied Mr. Poling's exercise of his rights and/or attempts to exercise his rights under the FMLA, and repeatedly discharged Mr. Poling and discriminated and retaliated against him for opposing its unlawful practices, all done in violation of 29 U.S.C. § 2615." (*Id.*) Thus, Plaintiff appears to be asserting claims under both the "entitlement" or "interference" theory and the "retaliation" or "discrimination" theory. *See* 29 U.S.C. §§ 2615(a)(1) and (a)(2); *see also Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (recognizing the "two distinct theories for recovery under the FMLA").

Core's Motion for Summary Judgment does not expressly differentiate between the two theories of liability identified in the Plaintiff's Complaint. But Core raises three arguments that apply to both the "interference" and "discrimination" theories. Core contends that (1) it complied fully with the FMLA, (2) Plaintiff's absence on September 21, 2008, was not FMLA-qualifying, and (3) Plaintiff failed to certify his FMLA leave in response to Core's valid request that he do so. (ECF No. 26, at 5-11.) Particularly in light of Plaintiff's failure to oppose Core's Motion and address Core's factual assertions, the Court finds Core's Motion to be well taken.

7

A.    *FMLA Interference*

To establish a claim for unlawful interference with FMLA rights, a claimant must show that (1) he was an eligible employee; (2) the employer is a covered employer under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) employee gave employer notice of his intent to take leave; and (5) employer denied the employee the FMLA rights to which he was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Relevant to the analysis of these elements is whether an employee has satisfied the FMLA's medical certification requirements. *See Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554 (6th Cir. 2006). Core argues that Plaintiff's FMLA claim fails because of Plaintiff's failure to submit a valid medical certification to support his need for FMLA leave on September 21, 2008.

The FMLA allows an employer to require that a request for leave be supported by a certification issued by the employee's health care provider. 29 U.S.C. § 2613(a). If an employee is seeking FMLA leave for his own serious health condition, a sufficient certification must state (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health-care provider regarding the condition; and (4) a statement that the employee is unable to perform the functions of his position. 29 U.S.C. § 2613(b). An employee's failure to provide the certification requested by the employer for leave already taken by the employee (the situation present in this case) means that the leave is *not* FMLA leave. *See* 29 C.F.R. §§ 825.305(b) and 825.313. This consequence is important in this case, as Plaintiff had exhausted all of his time off (other than FMLA) available to him; thus, FMLA leave was the only method by which Plaintiff

8

could excuse his September 21, 2008 absence and avoid termination under the terms of the collectively-bargained attendance policy governing Plaintiff's employment with Core.

As the Plaintiff has not opposed Core's Motion for Summary Judgment, it is undisputed that Core complied with the FMLA requirements relating to an employer's request for certification of an employee's absence.  Core has established that it requested certification in writing on September 22, 2008 (the day after Plaintiff's absence) and gave Plaintiff 15 days to comply.  *See* 29 C.F.R. § 825.305(b) (stating that an employer should request certification within five business days of an unforeseen leave; employee has 15 calendar days to provide certification, unless not practicable due to extenuating circumstances).  When Plaintiff failed to submit certification paperwork by October 8, 2008, Core gave Plaintiff another chance to submit it.  And when Plaintiff submitted certification paperwork from his doctor that did not provide all of the information required, Core then gave Plaintiff an opportunity to cure the insufficient certification.  *See* 29 C.F.R. § 825.305(c) (giving an employee seven days to cure an insufficient or incomplete certification); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007) (discussing the employer's obligation to give an employee the opportunity to cure a deficient certification).

It is also undisputed that Core gave Plaintiff specific written instructions as to what information the certification paperwork had to contain in order to be considered valid, including the necessity of stating why leave was required on September 21, 2008, the specific day for which Plaintiff called off work for purported FMLA reasons.  *See Culpepper v. BlueCross BlueShield of Tenn., Inc.*, 321 Fed. App'x 491, 496 (6th Cir. 2009) (holding that plaintiff could not claim FMLA leave for absences on additional days that were not listed on the doctor's

9

certification). It was only when Plaintiff failed to cure the deficiencies in the certification within seven days that Core considered his employment termination to be final.

Based on the undisputed facts identified in Core's Motion, Plaintiff did not comply with Core's valid request for a medical certification of the September 21, 2008 absence. Core was therefore entitled to treat Plaintiff's absence as non-FMLA leave, which carried with it in this case the consequence of termination. Core is therefore entitled to summary judgment on Plaintiff's claim of FMLA interference. *See e.g. Novak*, 503 F.3d at 579-80 (affirming summary judgment to employer on FMLA claim when plaintiff failed to submit valid certification paperwork); *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 566-67 (6th Cir. 2005) (affirming summary judgment to employer when plaintiff failed to provide FMLA certification).

### B.     *FMLA Discrimination/Retaliation*

In conclusory fashion, Plaintiff's Complaint also alleged FMLA "retaliation" and "discrimination" under 29 U.S.C. § 2615(a)(2). Core is entitled to summary judgment on this theory of FMLA liability.

Because Plaintiff has not opposed Core's Motion for Summary Judgment, he has necessarily failed to submit any evidence to support an FMLA "retaliation" claim based on either direct or indirect evidence. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (applying burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to FMLA retaliation claims based on indirect evidence). At a minimum, Plaintiff carries the burden of (1) establishing a *prima facie* case of FMLA retaliation and (2) coming forward with evidence from which a jury could find that Core's stated reason for his termination was a pretext for FMLA discrimination. *Skrjanc* at 315. Having failed to come

10

forward with evidence to rebut Core's Motion for Summary Judgment, Plaintiff has carried neither burden.  Core is therefore entitled to summary judgment on Plaintiff's FMLA "retaliation" claim.

### IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 26.)  Because the Court grants summary judgment on Plaintiff's claims of FMLA liability, the Court need not reach Defendant's summary-judgment arguments with respect to Plaintiff's entitlement to liquidated damages (or lack thereof).  The Clerk is **DIRECTED to ENTER JUDGMENT** in favor of the Defendant in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

**/s/ Gregory L.  Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**